IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA | Criminal No. 1:05-CR-0100 |
| v. | JUDGE SYLVIA H. RAMBO |
| TYRONE POOLE, | |
| Defendant. | |

# **M E M O R A N D U M**

Before the court are Defendant Tyrone Poole's Motion to Suppress Evidence (Doc. 26) and Motion to Suppress Statements (Doc. 28). For the reasons that follow, the court will deny both motions.

**I.      Background**

      **A.      Factual Background**

           **i. The Search Warrant and February 25, 2005 Search**

The search warrant at issue was issued on February 24, 2005 upon a finding of probable cause by District Justice Roy Bridges. (Def.'s Mot. to Suppress, Ex. A.) Pennsylvania State Police Trooper Jon J. Mearkle submitted the supporting affidavit. (*Id.*) Trooper Mearkle stated that as a member of the Pennsylvania State Police he has conducted numerous drug investigations involving the illegal sale and possession of marijuana, heroine, and cocaine. (*Id.*)

Trooper Mearkle stated in the affidavit that, while undercover, he purchased crack cocaine from Defendant on February 11, 2005 and on February 22, 2005 (one and one-half and one-half ounces, respectively). (*Id.*) The affidavit also

stated that on both occasions police officers observed Defendant travel from his residence at 1525 South 12th Street in Harrisburg, PA, directly to the location where he completed his transactions with Trooper Mearkle. (*Id.*)

Trooper Mearkle, along with other members of the Pennsylvania State Police, executed the warrant and searched Defendant's residence on February 25, 2005. (*Id.*) The police recovered an electronic scale, one bag of sandwich bags, one bag of marijuana, one small bag of cocaine, and two additional bags of cocaine. (*Id.*)

### ii. **Defendant's February 25, 2005 Statements**

Defendant made the statements at issue on February 25, 2005, during conversations with Trooper Mearkle and Corporal Fenstermacher that took place before and after the search of his residence. (Def.'s Mot. to Suppress Statements, Ex. A.) The pre-search conversation took place in the conference room of the FBI office in Harrisburg, PA. (*Id.*) Defendant had been ordered to appear before the court, which is located in the same building, for an unrelated proceeding on February 25th.

Trooper Mearkle indicated that he waited for Defendant to arrive at the FBI office following the court proceeding, per Corporal Fenstermacher's instructions. (Suppression Hr'g, Aug. 30, 2005.) Defendant arrived at the FBI office with his attorney Sanford Krevsky, Corporal Fenstermacher, another police officer, and others. (*Id.*) Trooper Mearkle and Corporal Fenstermacher then met with the Defendant and Mr. Krevsky. (Mot. to Suppress Statements, Ex. A.)

Trooper Mearkle stated that he informed Defendant and Mr. Krevsky that he was a Pennsylvania State Police Trooper and that he had a search warrant for Defendant's residence. (*Id.*) Trooper Mearkle said he then asked Defendant if he

wanted to cooperate with the police and indicated that such cooperation would be in the Defendant's best interests with respect to diminishing his criminal liability. (*Id.*)

Trooper Mearkle and Corporal Fenstermacher then left the conference room and allowed Defendant and Mr. Krevsky to confer privately for about 10-15 minutes. (Suppression Hr'g, Aug. 30, 2005.) When Trooper Mearkle and Corporal Fenstermacher returned to the conference room both Mr. Krevsky and Defendant indicated that Defendant wanted to cooperate with the police. (*Id.*)

During the meeting, Trooper Mearkle also questioned Defendant regarding the location of 2 ounces of crack cocaine that Defendant had been planning to sell to Trooper Mearkle later that day. (Mot. to Suppress Statements, Ex. A.) Defendant said he had not gotten the cocaine yet and that there was nothing illegal in his house. (*Id.*) Defendant also said the police could search his whole house. (*Id.*) The police did not arrest Defendant at that time. (*Id.*)

Defendant then rode with Corporal Fenstermacher and Trooper Mearkle when they drove to his residence to conduct the search; Defendant sat in the front seat next to Corporal Fenstermacher. (Suppression Hr'g, Aug. 30, 2005.) Defendant was not handcuffed or otherwise placed in restraints. (*Id.*) When the search yielded illegal narcotics, the Defendant apologized and told the officers that there was nothing else in the house. (Mot. to Suppress Statements, Ex. A.) Defendant also indicated that he wanted to cooperate in order to help himself if possible. (Suppression Hr'g, Aug. 30, 2005.) Trooper Mearkle did not arrest Defendant at that time. (*Id.*)

### B. Procedural Background

Defendant was indicted on various drug charges on March 9, 2005. Defendant filed a Motion to Suppress Evidence and a Motion to Suppress Statements, with supporting briefs, on July 22, 2005. The Government filed its opposition briefs on August 8, 2005. The court subsequently held a hearing on both issues on August 29, 2005. Trial is scheduled for October 11, 2005.

## II. Discussion

The issue before the court with respect to the warrant is whether there was sufficient probable cause to support the issuance of a warrant to search Defendant's residence on February 25, 2005.[1] With respect to Defendant's February 25, 2005 statements, the issues are 1) whether Defendant was in custody when he spoke to the police before or after the search on February 25, 2005 and 2) whether the police coerced Defendant into making the statements. Because the court finds that sufficient probable cause existed to support the issuance of the warrant and because Defendant has failed to establish that he was in custody at any time while he made his statements on February 25th or that any statements were coerced or made under duress, the court will deny both motions.

### A. The Search Warrant and February 25, 2005 Search

#### i. Legal Standard

The Fourth Amendment of the United States Constitution protects against unreasonable searches and seizures and provides that "no warrant shall issue

---

[1] Defendant also argues that no reasonable officer could have believed in good faith that the search warrant was valid. Because the court finds the warrant to be valid, the good faith issue is moot.

but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. Amend. 4.  The threshold requirement for issuance of a warrant is probable cause. *United States v. Ritter*, 416 F.3d 256, 262 (3d Cir. 2005).  The issuing magistrate must "simply [] make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983).  Affidavits must contain "sufficient information . . to allow [the magistrate] to determine probable cause." *Id.* at 239.  Statements that are merely conclusory will be inadequate. *Id.*

Moreover, "the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for . . . concluding' that probable cause existed." *Id.* at 238-39.  Thus, "a reviewing court is to uphold the warrant as long as there is a substantial basis for a fair probability that evidence will be found." *United States v. Conley*, 4 F.3d 1200, 1205 (3d Cir. 1993).  In doing so, reviewing courts should pay "great deference" to a magistrate's probable cause determination. *Gates*, 462 U.S. at 236 (quoting *Spinelli v. United States*, 393 U.S. 410, 419 (1969)).  Even if the reviewing court itself would not have found probable cause, it must uphold the warrant "so long as the issuing magistrate's decision was made consistent with the minimal substantial basis standard." *Conley*, 4 F.3d at 1205.

### ii. **Analysis**

The February 24, 2005 search warrant contained sufficient information to support a probable cause determination.  Trooper Mearkle's affidavit provided more than mere conclusory statements; it provided sufficient detail to satisfy the

substantial basis standard. Specifically, Trooper Mearkle's statements that he had twice purchased quantities of cocaine from Defendant and that on both occasions officers observed Defendant travel directly from his residence to the location where he completed the sales to Defendant, and consideration of Trooper Mearkle's training and experience, sufficiently support a "practical, common-sense decision" that there was a "fair probability," *id.* at 238, that illegal substances would be found at Defendant's residence on February 25, 2005. Thus, there was sufficient probable cause to support issuance of the warrant. Accordingly, Defendant's Motion to Suppress Evidence will be denied.

### B. The February 25, 2005 Statements

#### i. Legal Standard

The Fifth Amendment's protection against self-incrimination provides the foundation for well-settled procedural safeguards in custodial interrogation. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). However, Miranda warnings are required only prior to "custodial" interrogation. *California v. Beheler*, 463 U.S. 1121, 1124 (1983); *see also Steigler v. Anderson*, 496 F.2d 793, 798 (3d Cir. 1974).

Custodial interrogation is determined by an "objective test of whether the government has in some meaningful way imposed restraint on a person's freedom of action." *Steigler*, 496 F.2d at 793; *see also Miranda*, 384 U.S. at 444. Although the totality of the circumstances informs the inquiry, the ultimate question is "simply whether there is a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." *Beheler*, 463 U.S. at 1125. The "determination requires individualized analysis on a case-by-case basis." *Alston v. Redman*, 34 F.3d 1237, 1245 (3d Cir. 1994).

Courts have considered a number of factors in determining whether a person was in custody, including, but not limited to, age of the accused, his level of education, his intelligence, whether he has been advised of his constitutional rights, the length of detention, the nature of the questioning, the presence or absence of restraint on his liberty, and the use of physical punishment. *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973); *Steigler*, 496 F.2d at 800. In sum, "in the absence of actual arrest something must be said or done by the authorities, either in their manner of approach or in the tone or extent of their questioning, which indicates that they would not have heeded a request to depart or [allowed] the suspect to do so." *Id.* at 800.

The Fifth Amendment also prohibits the use of involuntary or coerced confessions made outside the custodial setting. *See United States v. Walton*, 10 F.3d 1024, 1028 (3d Cir. 1993). The determination of whether a confession is voluntary requires consideration of the totality of the circumstances. *Id.* (citing *Arizona v. Fulminante*, 499 U.S. 279, 286-87 (1991)). Although he totality of circumstances approach includes consideration of promises made in exchange for a person's statement, a promise does not "automatically render inadmissible any statement obtained as a result of that promise." *Walton*, 10 F.3d at 1028-29. The inquiry must consider whether, in light of all of the circumstances, an "agent's statements were so manipulative or coercive that they deprived the defendant of his ability to make an unconstrained autonomous decision to [make the statement]." *Id.* at 1030.

### ii.  **Analysis**

#### a.  **Custody**

Upon consideration of the totality of the circumstances, the court finds that Defendant was not in custody when he made the statements at issue to Trooper Mearkle and Corporal Fenstermacher on February 25, 2005. The most relevant factors influencing the court's finding include Defendant's opportunity to be advised of his constitutional rights (through the presence of counsel), the absence of restraints, the length of the detention, and the nature of questioning. *Schneckloth*, 412 U.S. at 226.

A significant factor in the court's decision is the presence of counsel. Defendant's attorney was present during the initial meeting between Trooper Mearkle, Corporal Fenstermacher, and the Defendant at the FBI office conference room. In addition, the Defendant and his attorney were able to confer privately for 10-15 minutes before telling the police that Defendant wanted to cooperate with their investigation. Thus, Defendant had ample opportunity to discuss his constitutional rights with his attorney before speaking with the police.

Although Defendant's attorney was not present during the search of Defendant's residence, the complete absence of restraints at any time during the meeting in the FBI conference room, while traveling to the residence, or after the search, also establish that Defendant was not in custody. The police did not place Defendant under arrest at any time on February 25th. In addition, both Trooper Mearkle and Corporal Fenstermacher left the conference room while Defendant met with his attorney. Finally, when the police and Defendant traveled to Defendant's residence to conduct the search, Defendant rode in the front seat, next to Corporal

Fenstermacher, and was not handcuffed or otherwise restrained in any manner. Such absence of restraints further supports a finding that Defendant was not in custody.

Finally, nothing about the duration of detention or nature of questioning suggest that Defendant was in custody. There is no evidence that the meeting in the conference room lasted for an unreasonable period of time or that the manner of questioning was coercive. Trooper Mearkle simply revealed his identity to Defendant and told him about the search warrant. Again, the police then left the room so that Defendant and his attorney could talk privately. Thus, the court finds nothing about "their manner of approach or in the tone or extent of their questioning" that suggests that Defendant was not free to leave. *Steigler*, 496 F.2d at 800. This finding, combined with the lack of restraints and presence of counsel, establish that Defendant was not in custody at any time on February 25, 2005.

Thus, because the statements at issue were made in a non-custodial setting, Miranda is not an issue. Therefore, any additional issues raised in Defendant's Motion to Suppress Statements regarding waiver are moot.

### b.     Coercion

Upon consideration of the totality of the circumstances, the court finds that Defendant's statements were made voluntarily and not as the result of coercion or duress. The presence of counsel during the initial meeting and Defendant's consistent position that he wanted to cooperate show that Defendant's statements were voluntary. Trooper Mearkle's statements that Defendant's cooperation would be helpful do not alter this finding.

Again, the presence of counsel is a significant factor in the court's decision. "With a lawyer present the likelihood that the police will practice coercion

is reduced . . . ." *Miranda*, 384 U.S. at 470. Defendant's attorney was present during the initial meeting in the FBI conference room and, as noted previously, the police allowed Defendant and Mr. Krevsky to confer privately. Both Mr. Krevsky and the Defendant subsequently told the police that Defendant wished to cooperate. Defendant's later statements, following the search at his residence, are consistent with this willingness to cooperate. Thus, the court finds that the statements made before and after the search were voluntary.

Trooper Mearkle's promises of leniency do not constitute coercion or duress. The statement that Defendant's cooperation would "help diminish [Defendant's] criminal liability," taken alone, fails to establish that Defendant's statements were not voluntary. *See Miller v. Fenton*, 796 F.2d 598, 605 (3d Cir. 1986) (describing situations where confessions were found to be voluntary even though interrogators indicated that honesty would be helpful for a suspect hoping for leniency from the state and "that [a suspect] could help himself by cooperating"). The court does not find Trooper Mearkle's statement to be manipulative or coercive. Moreover, when considered with all of the circumstances, the court finds that nothing prevented Defendant from making "an unconstrained autonomous decision" to make the statements. *Walton*, 10 F.3d at 1030.

Accordingly, because the court finds that Defendant made the February 25, 2005 statements voluntarily and in a non-custodial setting, the court will deny Defendant's Motion to Suppress Statements.

### III. Conclusion

In accordance with the foregoing discussion, the court will deny Defendant's Motions to Suppress Evidence and Motion to Suppress Statements. An appropriate order will issue.

s/Sylvia H. Rambo<br>
SYLVIA H. RAMBO<br>
United States District Judge

Dated: September 12, 2005.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA  :  Criminal No. 1:05-CR-0100

v.  :  JUDGE SYLVIA H. RAMBO

TYRONE POOLE,

Defendant.

# **O R D E R**

In accordance with the accompanying memorandum of law, **IT IS HEREBY ORDERED THAT**:

1) Defendant's Motion to Suppress Evidence (Doc. 26) is **DENIED**.

2) Defendant's Motion to Suppress Statements (Doc. 28) is **DENIED**.

                                       s/Sylvia H. Rambo
                                       SYLVIA H. RAMBO
                                       United States District Judge

Dated: September 12, 2005.